22CA0843 Coomer v Giuliani 11-14-2024 
 
COLORADO COURT OF APPEALS 
 
 
Court of Appeals No. 22CA0843 
City and County of Denver District Court No. 20CV34319 
Honorable Marie Avery Moses, Judge 
 
 
Eric Coomer, Ph.D., 

 
Plaintiff-Appellee, 
 
v. 
 
Rudolph Giuliani, 

 
Defendant-Appellant. 
 
 
ORDER AFFIRMED IN PART AND REVERSED IN PART, 
AND CASE REMANDED WITH DIRECTIONS 
 
Division IV 
Opinion by JUDGE SCHOCK 
Navarro and Kuhn, JJ., concur 
 
NOT PUBLISHED PURSUANT TO C.A.R. 35(e) 
Announced November 14, 2024 
 
 
Cain & Skarnulis PLLC, Charles J. Cain, Bradley A. Kloewer, Salida, Colorado; 
RechtKornfeld PC, Thomas M. Rogers III, Mark Grueskin, Andrew E. Ho, 
Denver, Colorado, for Plaintiff-Appellee 
 
Gessler Blue LLC, Scott E. Gessler, Geoffrey N. Blue, Greenwood Village, 
Colorado, for Defendant-Appellant 
 

1 
Â¶ 1 Defendant, Rudolph Giuliani, appeals the order denying his 

anti-SLAPP

1

 motion to dismiss the complaint filed by plaintiff, Eric 
Coomer. Consistent with our opinion in Coomer v. Donald J. Trump 

for President, Inc., 2024 COA 35 (Coomer I), we (1) affirm the denial 

of the motion to dismiss the claims for defamation and intentional 
infliction of emotional distress and the request for injunctive relief; 
(2) reverse the denial of the motion to dismiss the civil conspiracy 
claim; and (3) remand for the district court to consider Giulianiâs 

request for attorney fees and costs and for further proceedings. 
I. Background 

Â¶ 2 Coomer is the former Director of Product Security and Strategy 

at Dominion Voting Systems, Inc. (Dominion), a company that 
provided voting technology and support services in connection with 
the 2020 presidential election. He brought this lawsuit against 
Giuliani and several other defendants based on statements they 
made about him in questioning the validity of the election results. 
 

1

 âSLAPPâ stands for âstrategic lawsuit against public participation.â 

Salazar v. Pub. Tr. Inst., 2022 COA 109M, Â¶ 1 n.1. The anti-SLAPP 

statute allows for a special motion to dismiss any cause of action 
arising from an act in furtherance of a personâs constitutional right 
of petition or free speech. Â§ 13-20-1101(3)(a), C.R.S. 2024. 

2 
Â¶ 3 We addressed Coomerâs claims against the other defendants in 

Coomer I. In doing so, we considered the substance of Giulianiâs 

statements because he was alleged to have made those statements 
as an agent of one of the other defendants, Donald J. Trump for 
President, Inc. (the Trump Campaign). See Coomer I, Â¶ 34 n.3; see 

also id. at Â¶Â¶ 34-36, 108-09, 185-95. But we did not address 

Giulianiâs appeal because the action was stayed as to him due to 
his bankruptcy filing. See id. at Â¶ 6 n.2. That stay has now been 
lifted, meaning that Giulianiâs appeal may now proceed. 

Â¶ 4 The facts underlying Coomerâs claims in this case are set forth 

in Coomer I, Â¶Â¶ 7-40, and we will not repeat them at length. In 
short, Joe Oltmann, the co-host of the Conservative Daily podcast, 
claimed to have infiltrated an âAntifaâ conference call in September 
2020, where he heard someone identified as âEric . . . the Dominion 

guyâ say, âDonât worry about the election. Trump is not going to 
win. I made effing sure of that.â Oltmann explained that he had 
determined the person was Coomer, and he accused Coomer of 
âinterfering with the election.â Oltmann repeated this account 
several times on his own podcasts and in other media. The other 
defendants made similar statements in sharing Oltmannâs account. 

3 
Â¶ 5 Coomerâs claims against Giuliani are based on statements 

Giuliani made at a November 19, 2020, press conference, where he 
spoke on behalf of the Trump Campaign. Giuliani began the press 
conference by introducing himself as a representative of the Trump 
Campaignâs legal team. He then explained that the purpose of the 
press conference was to present âthe evidence that weâve collected 
over the last . . . two weeksâ regarding allegations of election fraud. 
Â¶ 6 After running through a litany of such allegations, Giuliani 

asked Sidney Powell, another attorney he had introduced as a 
member of the legal team, to describe what he called âanother 
totally outrageous situation.â Powell spoke generally about 

Dominionâs role in the election and then turned to Coomer: 

Eric Coomer . . . is on the web as being 
recorded in a conversation with Antifa 
members, saying that he had the election 
rigged for Mr. Biden. Nothing to worry about 
here. And he was going to â they were going 
to âFâ Trump. His social media is filled with 

hatred for the President, and for the United 
States of America as a whole . . . . 
Â¶ 7 Later in the press conference, Giuliani returned to that 

account: 
[B]y the way, the Coomer character, who is 
close to Antifa, took off all of his social media. 

4 
Ah-ah, but we kept it, weâve got it. The man is 

a vicious, vicious man . . . and he specifically 
says that theyâre going to fix this election. . . . 

This is real. It is not made up. [T]hereâs 
nobody here that engages in fantasies. Iâve 
tried a hundred cases. Iâve prosecuted some of 
the most dangerous criminals in the world. I 
know crimes. I can smell them. You donât 
have to smell this one. I can prove it to you 
eighteen different ways. 
Â¶ 8 At the time of the November 19 press conference, the Trump 

Campaign had filed lawsuits in Pennsylvania and Michigan 
challenging the election results in those states. Neither of those 
lawsuits referred to Coomer, and only the Michigan case involved 
any allegations about Dominion. In the days and weeks after the 
press conference, Powell filed four more lawsuits â in Michigan, 
Georgia, Wisconsin, and Arizona â on behalf of individual plaintiffs. 
Â¶ 9 Coomer sued Giuliani (and the other defendants), asserting 

claims for defamation, intentional infliction of emotional distress, 
and civil conspiracy, and seeking damages and injunctive relief, 
based on Giulianiâs statements at the November 19 press 
conference. Coomer alleged that Giulianiâs statements about him 
were false and defamatory insofar as they asserted that Coomer 
âsuggest[ed] he would rig the electionâ and âtook actions to rig the 

5 
election.â In his complaint, Coomer denied (1) having any 

knowledge of the alleged Antifa conference call; (2) participating in 
such a call; (3) making the statements attributed to him; or 
(4) taking any action to subvert the presidential election results. 
Â¶ 10 Giuliani moved to dismiss Coomerâs complaint under section 

13-20-1101(3)(a), C.R.S. 2024. He argued that (1) his statements 

were protected by the litigation privilege; (2) Coomer could not show 
that Giuliani made the statements with actual malice; (3) Coomer 
could not satisfy the elements of his claims for intentional infliction 
of emotional distress and civil conspiracy; and (4) Coomerâs request 

for injunctive relief was not a separately cognizable claim. In 
support, Giuliani submitted a declaration, attesting that he believed 
the statements he made at the press conference regarding Coomer 
were true and that the purpose of the press conference was to 
âannounce an opening statementâ as to what the Trump 
Campaignâs legal team expected evidence to show in litigation. 

Â¶ 11 Coomer filed an omnibus response to all defendantsâ special 

motions to dismiss and attached his own declaration, attesting that 
he was not on the alleged conference call in September 2020, did 

6 
not make the statement the defendants had attributed to him, and 
did not take any action to subvert the presidential election. 
Â¶ 12 After a two-day hearing, the district court denied all 

defendantsâ motions, including Giulianiâs, in their entirety. It 

concluded that the anti-SLAPP statute applied but that Coomer had 
established a reasonable likelihood of prevailing on his claims. 
II. Applicable Law and Standard of Review 

Â¶ 13 We review an order denying an anti-SLAPP special motion to 

dismiss de novo, applying the same two-step analysis as the district 
court. Coomer I, Â¶Â¶ 62, 64. First, we must determine whether the 
defendant has made a threshold showing that the anti-SLAPP 
statute applies â âthat is, whether the claims arise from the 

defendantâs exercise of free speech or right to petition in connection 
with a public issue.â Id. at Â¶ 62 (citation omitted). Second, if the 
defendant meets that threshold, the burden shifts to the plaintiff to 
establish a reasonable likelihood of prevailing on the claims. Id. 

Â¶ 14 At the second step, we must consider the pleadings and 

supporting and opposing affidavits to determine âwhether the 
plaintiff has stated a legally sufficient claim and made a prima facie 
factual showing sufficient to sustain a favorable judgment.â Id. at 

7 
Â¶ 63 (citation omitted). In doing so, we must accept the plaintiffâs 

evidence as true and assess the defendantâs evidence âonly to 

determine if it defeats the plaintiffâs claim as a matter of law.â Id. at 

Â¶Â¶ 66, 72 (citation omitted). We do not weigh the evidence or 
resolve factual conflicts. Id. at Â¶ 63. Nor may we (or the district 
court) make credibility determinations. Id. at Â¶ 73. Instead, our 
role is limited to determining whether the plaintiff has met the 
âthreshold burdenâ required for the case to proceed. Id. at Â¶ 76. 

Â¶ 15 Because Coomer does not dispute the district courtâs 

conclusion that the anti-SLAPP statute applies, we consider only 
whether Coomer has met his prima facie burden of establishing a 
reasonable likelihood of prevailing on his claims. See id. at Â¶ 83. 
III. Analysis 

Â¶ 16 As noted above, we did not in Coomer I consider Coomerâs 

claims against Giuliani personally. See id. at Â¶ 6 n.2. But because 
Coomerâs claims against the Trump Campaign are based in part on 
Giulianiâs statements, we did analyze Giulianiâs statements in 

assessing the viability of Coomerâs claims against the Trump 

Campaign. Giuliani makes essentially the same arguments on 
appeal that the Trump Campaign (and other defendants) did. 

8 
Â¶ 17 Thus, many of our conclusions in Coomer I, which we choose 

to follow, are equally pertinent to the issues Giuliani raises in this 
appeal. While we repeat and summarize certain aspects of those 
conclusions as they relate to Giulianiâs arguments, we incorporate 
by reference the more fulsome analysis in Coomer I where it applies. 
A. Defamation 

Â¶ 18 Giuliani argues that Coomer did not present clear and 

convincing evidence that Giulianiâs statements were false or that 
Giuliani acted with actual malice. He asserts that the district court 
erred by substituting its own interpretation of Giulianiâs statements 

for what he actually said. And he contends that he did not act with 
actual malice because he believed his statements were true. 
Â¶ 19 Initially, to the extent Giuliani suggests that Coomer had to 

prove falsity and actual malice by clear and convincing evidence in 

response to the motion to dismiss, he is incorrect. Id. at Â¶ 77. That 
is the burden Coomer must meet at trial. Id. at Â¶ 87. At this stage 
of the case, Coomer need only show a reasonable probability that he 
will be able to meet his burden of proof by clear and convincing 

evidence at trial. Id. We conclude that Coomer has made this 
prima facie showing as to his defamation claim against Giuliani. 

9 
1. Legal Standard 

Â¶ 20 To prevail on a claim of defamation, a plaintiff generally must 

prove four elements: (1) a defamatory statement concerning the 
plaintiff; (2) publication; (3) fault amounting to at least negligence; 
and (4) either actionability of the statement irrespective of special 
damages or the existence of special damages. Id. at Â¶ 85. 
Â¶ 21 But when the statement involves a matter of public concern, 

as in this case, three heightened standards apply. Id. at Â¶ 86. The 
plaintiff must prove (1) the falsity of the statement by clear and 
convincing evidence; (2) actual malice of the speaker by clear and 
convincing evidence; and (3) actual damages. Id. Clear and 
convincing evidence is âevidence that is highly probable and free 
from serious or substantial doubt.â Id. at Â¶ 87 (citation omitted). 

2. Falsity 

Â¶ 22 Giuliani does not dispute that he said Coomer said he was 

going to âfix the election.â But he asserts that the district court 
erred by concluding that âthe substance of the statementsâ 
conveyed that Coomer âdid in fact subvert the election.â We 
rejected this argument in Coomer I, Â¶ 109, and we reach the same 

10 
conclusion here, viewing the statements âin context to determine 
how a reasonable person would have understood them.â Id. at Â¶ 90. 

Â¶ 23 Giuliani began the press conference by explaining that its 

purpose was to present evidence of alleged election fraud. After 
Powell relayed the account of Coomer âsaying that he had the 
election rigged for Mr. Biden,â Giuliani highlighted that account, 
repeating that Coomer âspecifically says that theyâre going to fix the 
election.â He then followed that statement by asserting that there 

had been a âcrimeâ and that he could âprove it . . . eighteen different 

ways.â Taken in context, this statement can reasonably be 

understood as an assertion that Coomer not only said he was going 
to fix the election but actually took steps to do so. See id. at Â¶ 109. 
Â¶ 24 Accepting Coomerâs evidence as true, he has shown a 

reasonable likelihood of proving by clear and convincing evidence 
that these statements were false. See id. at Â¶Â¶ 137-145. Most 
importantly, in his declaration, Coomer attested that he (1) did not 
participate in the alleged conference call; (2) did not say he could rig 
the election; and (3) did not take any action to subvert the election. 

That declaration, if true, could itself provide clear and convincing 
evidence that Giulianiâs statements were false. See id. at Â¶ 139. 

11 
Coomer also presented affidavits from two other individuals 
corroborating his denial. Id. at Â¶ 140. And he identified several 
apparent inconsistencies or weaknesses in Oltmannâs account of 
the call on which Giulianiâs statements were based. Id. at Â¶ 141. 

Â¶ 25 Like the other defendants in Coomer I, Giuliani cites other 

evidence that he contends could support a jury finding that the 
conference call occurred and that Coomer made the statements 
Giuliani attributed to him. And he discounts Coomerâs declaration, 
asserting that Coomer offered no alibi for the time of the call

2

 and 
presented no evidence that a call did not happen. But as we 
explained in Coomer I, we may not weigh the evidence or decide 
which evidence we find more persuasive. Id. at Â¶Â¶ 143-44. 
Â¶ 26 The question is not, as Giuliani suggests, whether a 

reasonable jury could find Giulianiâs statements were true. See id. 

at Â¶ 143. The question is whether, accepting Coomerâs evidence as 
true, there is a reasonable likelihood that a jury could find by clear 
and convincing evidence that Giulianiâs statements were false. Id. 

For the reasons above and in Coomer I, we conclude that it could. 
 

2

 Neither Oltmann nor Giuliani identified a specific time of the 
alleged call, and even the claimed date of the call varied over time. 

12 
3. Actual Malice 

Â¶ 27 Giuliani contends that Coomer did not establish a reasonable 

probability of proving actual malice by clear and convincing 
evidence because Giuliani reasonably believed his statements were 
true. For the reasons in Coomer I, Â¶Â¶ 160-66, 174-79, we disagree. 
Â¶ 28 Actual malice means that the speaker made the statement 

âwith actual knowledge that it was false or with reckless disregard 
for whether it was true.â Id. at Â¶ 147 (citation omitted). A speaker 

acts with reckless disregard if the speaker âentertains serious 
doubts as to the truth of the statement or acts with a high degree of 
awareness of its probable falsity.â Id. (citation omitted). 

Â¶ 29 It is undisputed that Giulianiâs statements about what Coomer 

said were based entirely on Oltmannâs account of the alleged 

September 2020 conference call. Giuliani asserts that his reliance 
on Oltmann â someone he calls a âreliable source with first-hand 

knowledgeâ â precludes a finding of actual malice. He also asserts 

that he conducted some investigation into Oltmannâs allegations 
about Coomer and found no reason to disbelieve them, particularly 
when other media sources were also reporting those allegations. 

13 
Â¶ 30 We rejected effectively the same arguments in Coomer I. See 

id. at Â¶Â¶ 161-66, 171-72, 174-180. As we explained there, even if 

Giuliani genuinely believed Oltmannâs account of the conference 
call, or the media reports of that account, âthat account itself could 

reasonably support a finding that [Giuliani] entertained serious 
doubtsâ as to whether Coomer made the comment. Id. at Â¶ 162. In 

particular, Oltmannâs attribution of the comment to Coomer was 
based entirely on (1) an anonymous personâs identification of 
another anonymous speaker as âEric, the Dominion guyâ; 

(2) Coomerâs position with Dominion; and (3) Coomerâs social media 

posts in opposition to President Trump. Id. at Â¶Â¶ 163-64. Given 
the limited substantiation and the magnitude of the claim, there is 
a reasonable likelihood that a jury could find that Giuliani, at a 
minimum, entertained serious doubts as to its truth. Id. at Â¶ 164. 
Â¶ 31 A jury could also reasonably find that Giuliani acted with 

actual malice in suggesting that Coomer had committed a âcrimeâ 
by in fact interfering with the election. See id. at Â¶ 165. Oltmann 
did not claim to have personal knowledge that Coomer had done so. 

Nor does Giuliani advance any theory as to how he believed Coomer 
had personally manipulated the election results. Id. And by the 

14 
time Giuliani made his statements, the government agency 
responsible for election security had rejected any claim that the 
election had been compromised. Id. As with the other defendants, 
there is a reasonable likelihood that a jury could find Giuliani 
ârecklessly disregarded the truth by asserting such an explosive and 

improbable claim without any evidence to support it.â Id. 

Â¶ 32 We agree with Giuliani that actual malice is subjective and 

that the focus must be on his state of mind when he made the 
statements in question. See id. at Â¶Â¶ 148, 179. And thus, the 
district court erred by relying on information that post-dated those 
statements. Id. at Â¶ 177. But, as with the other defendants, we 
reject Giulianiâs contention that the prevalence of election fraud 

allegations generally precludes a finding of actual malice as to his 
claim that Coomer interfered with the election. See id. at Â¶ 179. 
Â¶ 33 We likewise reject Giulianiâs argument that his review of 

Coomerâs social media posts and investigation of Coomer 
necessarily establish that he sincerely believed his statements to be 
true. See id. at Â¶Â¶ 174-75. Like the similar arguments raised by 
the other defendants in Coomer I, these are facts Giuliani may 
present at trial. Id. at Â¶ 175. But for purposes of Giulianiâs anti-

15 
SLAPP motion, it is enough that Coomer has presented evidence 
that is reasonably likely to support the finding that Giuliani acted 
with actual malice when he made his statements. Id. 

4. Litigation Privilege 

Â¶ 34 Giuliani next contends that his statements at the press 

conference were protected by the litigation privilege because they 
were related to the ongoing lawsuit in Michigan and other lawsuits 
Giuliani anticipated filing in good faith. We rejected this argument 
in Coomer I, concluding that Giulianiâs statements were not 

protected by the litigation privilege. Id. at Â¶Â¶ 185-95. Giuliani 
raises no argument that would cause us to revisit that conclusion. 
Â¶ 35 In particular, for the litigation privilege to apply, the statement 

must both (1) have some relation to the subject matter of the 
litigation (existing or contemplated in good faith) and (2) be made in 
furtherance of the objective of the litigation. Id. at Â¶ 187. And as 
we held in Coomer I, while Giulianiâs statements satisfied the first 

prong of this analysis, they did not satisfy the second. 
Â¶ 36 In his briefs, Giuliani did not offer any explanation as to how 

his statements about Coomer â allegations that did not appear in 
the Michigan complaint â furthered the objective of the existing or 

16 
contemplated litigation. Id. at Â¶Â¶ 191-92. Indeed, Giuliani did not 
address the second prong of the litigation privilege at all, focusing 
only on whether his statements ârelated toâ the litigation.

3

 
Â¶ 37 At oral argument, Giuliani argued for the first time that his 

statements about Coomer were in furtherance of the litigation 
because their purpose was to find witnesses for future potential 
lawsuits. We note that no lawsuit was ever filed by Giuliani or the 
Trump Campaign that included any allegations about Coomer. But 
even if such litigation was contemplated in good faith, Giulianiâs 
counsel conceded at oral argument that the argument about finding 
witnesses was not raised in Giulianiâs briefs. Nor does the record 

contain any assertion by Giuliani that this was his purpose in 
making the statements. We will not consider an argument first 
made at oral argument, particularly one that lacks record support. 

See Rucker v. Fed. Natâl Mortg. Assân, 2016 COA 114, Â¶ 35. 

 

3

 As we explained in Coomer I, we agree with Giuliani that the 
district court was incorrect in suggesting that the litigation privilege 
âcan be lost by a finding of actual malice.â Coomer v. Donald J. 

Trump for President, Inc., 2024 COA 35, Â¶ 186 n.16. But because 

the litigation privilege does not apply, that error is harmless. Id. 

17 
B. Intentional Infliction of Emotional Distress 

Â¶ 38 Giulianiâs sole argument with respect to Coomerâs claim for 

intentional infliction of emotional distress is that Coomer failed to 
meet his burden of showing actual malice. Because we have 
concluded that Coomer has established a reasonable likelihood of 
proving by clear and convincing evidence that Giuliani acted with 

actual malice, we reject this argument. See Coomer I, Â¶ 202. 
Â¶ 39 To the extent Giuliani asserts that Coomer also failed to satisfy 

his burden with respect to the element of extreme and outrageous 
conduct, we disagree for the reasons stated in Coomer I, Â¶Â¶ 203-05. 
Specifically, accepting Coomerâs evidence as true, there is a 
reasonable likelihood that a jury could find that Giulianiâs 
accusations were sufficiently outrageous to sustain the claim. Id. 

C. Conspiracy 

Â¶ 40 Giuliani asserts that the district court erred by denying his 

motion to dismiss the conspiracy claim because Coomer failed to 
present any evidence of an agreement to defame him. See Coomer I, 

Â¶ 208 (listing elements of civil conspiracy, including âa meeting of 
the minds on the object or course of actionâ). On this point, 
consistent with our conclusion in Coomer I, we agree with Giuliani. 

18 
Â¶ 41 As we explained in Coomer I, it was incumbent on Coomer to 

present evidence of an agreement, direct or circumstantial, between 
Giuliani and at least one other person to make the defamatory 
statements. Id. at Â¶ 209. He failed to do so. Id. at Â¶Â¶ 210-12. To 
the extent there was coordination among Giuliani, Powell, and other 
members of the Trump Campaign, â[a] corporation and its agents 

acting on its behalf âdo not constitute the âtwo or more personsâ 

required for a civil conspiracy.ââ Id. at Â¶ 213 (citation omitted). 

Â¶ 42 Thus, we conclude that Coomer has failed to meet his burden 

of establishing a reasonable likelihood of prevailing on his civil 
conspiracy claim against Giuliani. That claim must be dismissed. 

D. Injunction 

Â¶ 43 Finally, Giuliani argues, and Coomer agrees, that the district 

courtâs review of Coomerâs request for injunctive relief was 
premature. We agree. An injunction is not a substantive claim that 
is subject to an anti-SLAPP motion to dismiss. Coomer I, Â¶ 218. It 
is a remedy for a claim upon which a claimant prevails. Id. 

Â¶ 44 We therefore agree with Giuliani that the district court erred 

by addressing the merits of Coomerâs request for injunctive relief. 

19 
But we affirm the denial of Giulianiâs motion to dismiss that request 
because, procedurally, it could not be dismissed. See id. at Â¶ 219. 
IV. Attorney Fees 

Â¶ 45 Giuliani requests his attorney fees and costs as a âprevailing 

defendantâ under section 13-20-1101(4)(a). Whether a party 

prevailed on an anti-SLAPP motion â and to what extent any 
partial success warrants an award of fees â is a determination 
within the broad discretion of the district court. Coomer I, Â¶ 221. 
Â¶ 46 Thus, because we have reversed one aspect of the district 

courtâs ruling, we remand the case to the district court to determine 
whether Giuliani is a partially prevailing defendant; the extent to 
which his partial appellate success, if any, warrants an award of 
appellate fees; and the reasonableness of those fees. Id. at Â¶ 224. 
V. Disposition 

Â¶ 47 We reverse the district courtâs denial of Giulianiâs motion to 

dismiss the conspiracy claim. We affirm the district courtâs order as 
to Giuliani in all other respects. We remand the case to the district 
court for determination of Giulianiâs request for attorney fees and 

costs, and for further proceedings consistent with this opinion. 
JUDGE NAVARRO and JUDGE KUHN concur.